## The Alfred Atmore Pope Foundation, Incorporated, *vs.* The New York, New Haven and Hartford Railroad Company.

First Judicial District, Hartford, May Term, 1927.

Wheeler, C. J., Maltbie, Haines, Hinman and Banks, Js.

The recital of evidential facts has no proper place in a finding.

The valuation of property by the owner is not a necessary part of a tax list, nor is it covered by the oath which every person giving in a list is required to make under §§ 1137 and 1138 of the General Statutes. Therefore, mere authority to file a list as the owner's agent does not include the power to place a valuation on the property, and such a valuation cannot be subsequently used against the owner as an admission unless it is proved to have been within the scope of the agency.

The cardinal rule of damages is fair compensation for the loss or injury. Ordinarily, where property is involved, this is measured by its market value, but in cases where there is no real market value, or where that value does not represent the real worth to the owner, he is allowed to recover the value *to him,* based on the actual money loss which, in view of all the circumstances and conditions, results from his being deprived of the property, not including, however, any sentimental or fanciful value which he may for any reason place upon it.

In 1922 the plaintiff acquired seventeen hundred acres of woodland and five hundred acres of farm land, for the purpose of establishing thereon a memorial in the form of a secondary school and junior college in which instruction was to be offered in the usual academic subjects, in agriculture and stock-breeding, and in forestry and silviculture, the woodland forming an integral part of the school plan and affording, in addition, shade, ornament and opportunity for play and recreation. Before the land was developed for these purposes, it was extensively burned by fires caused by sparks from the defendant's locomotives. In assessing damages for this injury, the trial court concluded that the property had at that time no peculiar value as a site for a school, home, country estate, or fish and game club; that the value of the trees on the burned portion was merely that common to similar woodland tracts, and that the extent of the plaintiff's recovery was the diminution in the market value of its land. *Held* that the trial court erred, since the plaintiff was entitled to have its damages measured in the light of the uses

for which the woodland was peculiarly available and valuable to it.

One fact is relevant to another fact, whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable.

Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue.

When equitable relief is demanded, a considerable latitude in the presentation of evidence should be permitted, commensurate with the far-reaching limits of that subject.

In the present case, the plaintiff sought an injunction restraining the defendant from setting further fires and requiring it to operate its trains in such a manner and with such safeguards as to eliminate danger from that source. *Held* that upon this issue, evidence tending to show that the defendant's railroad could be operated by other and less dangerous methods, and that such other methods were used in parts of this and other countries, was admissible to prove negligence as a basis for the relief demanded, and to place the trial court in the possession of facts and expert opinions essential to a just disposition of the case.

Argued May 3d—decided July 25th, 1927.

ACTION to recover damages for injuries to the plaintiff's woodland, alleged to have been caused by fires communicated from the defendant's locomotives, for an injunction, and for other relief, brought to the Superior Court in Hartford County and tried to the court, *Dickenson, J.;* judgment for the plaintiff for $12,285, from which it appealed. *Error and new trial ordered.*

*James P. Andrews* and *Thomas Hewes,* with whom was *Richard H. Phillips,* for the appellant (plaintiff).

*James W. Carpenter,* for the appellee (defendant).

HAINES, J. The plaintiff was incorporated in this State in 1918. In January, 1922, it received, and still

holds, the title to a tract of about twenty-two hundred acres of land, located in part in Avon and in part in Farmington in this State. About seventeen hundred acres of this tract was woodland and five hundred acres farm land.

The tracks of the defendant's Northampton division extend along the west side of the plaintiff's land and across a portion of it on the northerly end, and on April 28th, 1922, April 29th, 1922, and May 10th, 1922, three separate fires were set upon the wooded portion of this tract, by sparks from defendant's locomotives. As a result of the damage caused by these fires, the plaintiff brought the present action, each of the first three counts of the complaint describing one of the fires referred to and asking compensation in damages.

A fourth count was added for the purpose of obtaining equitable relief by injunction against the risk of future fires from the same source. After demurrer and motion to erase had been filed by the defendant and heard and decided by the court, the defendant made answer by denial and set up certain special matters of defense, to which the plaintiff demurred. This being heard and determined, there were various amendments to the pleadings, issue was joined, and the case was heard at length by the court and, the statutory liability of the defendant being admitted (General Statutes, § 3785), judgment was given for the plaintiff for $10,000 damages plus interest and costs, but plaintiff was denied injunctive relief. This appeal was thereupon taken by plaintiff.

We shall first consider one of the five claimed errors in the action of the Superior Court upon plaintiff's motion to correct the finding, by striking out paragraph thirty-seven thereof, together with the exception to the admission of the tax lists in evidence. Paragraph thirty-seven reads: "Both before and after

the fires of 1922 plaintiff admitted in its sworn reports to the assessors of the towns of Farmington and Avon that the total value of its entire tract of land was approximately $10 per acre." The fact to be found was the value of the land, and what some witness said or admitted on that point was merely evidential. The recital of evidential facts has no proper place in a finding. The motion to strike out paragraph thirty-seven should have been granted.

The plaintiff's objection to the admission of the tax lists was valid and their admission erroneous. These tax lists were for the years 1921, 1922 and 1923, which showed an "owner's valuation" of $10 per acre, and it was defendant's claim that they were prepared and filed by one Arthur, who was authorized by the plaintiff to do so. The certified testimony of Mrs. Riddle, who owned the property before it was transferred to this plaintiff, was in part as follows: "Q. Well, now, Mrs. Riddle, who was this—did you have a secretary by the name of Arthur? A. Yes. Q. And did he have charge of entering your properties in the ——? A. Yes. Q. And valuing it and so on? Yes. . . . Q. You authorized him to go out and file these returns with the tax officer on behalf of you? A. Yes; he was under Mr. Swenston. Q. And he was authorized to speak for you? A. Yes." The lists for the three years were admitted over the plaintiff's objection. Later, Mrs. Riddle was recalled, as managing director of the plaintiff corporation, and testified that neither she as an individual nor as managing director, nor the plaintiff corporation, authorized Arthur to place the owner's valuation on these lists. It will be observed that Mrs. Riddle, in the early part of the examination, admitted that Arthur was authorized by her to value *her* property. As she owned it in 1921, when the first list went in, the trial court could properly

have treated this admission, if it assumed she understood the scope of the question, as relating to her *own* list of 1921. It clearly is not an admission that Arthur was the authorized agent of this plaintiff corporation which owned the property when the 1922 and 1923 lists were filed, and Mrs. Riddle expressly states that neither she as managing director nor the corporation ever gave Arthur such authority. There is no evidence before us which contradicts her statement, nor any evidence whatever that Arthur *was* authorized by this plaintiff to make a valuation. The trial court was not justified, upon the evidence certified, in assuming Arthur had the authority of the corporation to say how much the property was worth and that the lists of 1922 and 1923 contained admissions of the corporation that the land was worth but $10 per acre. Even if it had appeared that Arthur *was* authorized by the plaintiff to file the lists, the valuation was not a necessary part of the list, and further proof would be necessary to show the agent's authority to put a value on the land.

Where a husband, as agent for his wife, filed a tax list of her property, and it was offered to contradict the plaintiff's testimony as to its value, we said: "The evidence offered did not tend to contradict the plaintiff. The husband was not her agent to put a valuation upon the property, but simply to give a list of the property. He was required to make oath to the list but not to the valuation." *Martin* v. *New York & N. E. R. Co.,* 62 Conn. 331, 343, 344, 25 Atl. 239. The "owner's valuation" is not required in the oath prescribed by law. General Statutes, §§ 1137, 1138.

While the lists were offered in the present case solely to show admissions, the same principles apply as in the case cited. The importance of this ruling is shown by the statement made by the trial court in the memo-

randum of decision: "There is, however, a wide difference of opinion between plaintiff's and defendant's experts as to value. The testimony of the defendant's experts in this respect seems to be strengthened by the estimates of the plaintiff itself as evidenced *by its* statements in its tax lists. . . . The rule is well established that for injuries of this character the measure of damages is the diminution in value of the premises caused by the fire. . . . It appears . . . that while the plaintiff now claims its land to have been worth in the neighborhood of $80 an acre, it has through its agent sworn to a value of $10 an acre in its tax list."

It is obvious that the trial court gave much weight to this evidence in reaching its conclusion as to the extent of the damages, and it appears from the record and from the briefs of both counsel, that the amount of the damages is a crucial point of this appeal, taken by the prevailing party.

The treatment of these lists as admissions by the plaintiff corporation that the property injured was of small value, and the weight attached to it by the trial court, could not have had other than a seriously prejudicial effect upon the rights of the plaintiff, and their admission was reversible error. Since there must be a new trial, we do not deem it necessary to review many of the questions raised by the appeal and ably and fully discussed in brief and argument on both sides. There is, however, one question of supreme importance, relating to the damages, which sharply differentiates the contentions of counsel at all points, and directly or indirectly enters into many of the reasons of appeal. We refer to the measure of damages; and since this question will necessarily arise upon further hearing of the case, we shall here consider it.

Three paragraphs of the finding are to the effect that in 1922, when the fires in question occurred, the

seventeen hundred acres of woodland had not been consolidated with the five hundred acres of farm land originally bought for school purposes, so as to make the entire tract a unit having peculiar value because of its common ownership; that neither of these tracts had at that time any peculiar value as a school site, building or home site, country estate, or fish and game club, and that the trees on the burnt portion had no peculiar value other than that which is common to woodland tracts of similar types, namely, for timber, cordwood, fuel and conserving of the soil, ponds and streams.

These are conclusions of fact, and plaintiff claims they are illogically drawn from the subordinate facts, and that they are the result of incorrect applications of law to the subordinate facts. That they were the basis upon which the court fixed the damages is shown by the finding: "The total diminution in the market value of the plaintiff's land as a result of the fires was $10,000."

The plaintiff acquired all this property in January, 1922, before these fires took place, and it was "a tract of land containing about twenty-two hundred acres." The plaintiff was incorporated in 1918, with the object and purpose to establish and maintain a memorial, the form of which was to be "an academy for the education of youth in the branches of learning between those usually taught in the graded schools of the state and those usually taught in colleges and universities, and incidental to the aforesaid instruction to give instructions in subjects of the lower grade in agriculture and in stock breeding and in the application of the same by the operation of a farm or farms." The finding states: "The plaintiff acquired the property for the purpose of building and carrying on thereon a junior college or preparatory school for boys." The articles

of association were amended in 1925 to include instruction in forestry and in the application of the same by the operation of a forest, and the finding further states, that both in 1922, when the fires occurred, and in 1925, the plaintiff "expected to utilize the woodland . . . as an integral part of the school for course of study in forestry and silviculture, the development of a model forest, and for recreation and play. In addition, the trees would then be valuable for shade and ornament, for the conserving of the soil, ponds, and streams on said land, for the scenic effect of the property as a whole."

The accuracy of these facts is not affected by any other subordinate facts in the finding, such as the undeveloped condition of the property, the effect of former fires, etc.

In view of the foregoing facts found by the court, can the conclusion legally or logically be drawn that this burned tract had no "peculiar value as a school site, building or home site, country estate, or fish and game club," and that the trees in question "had no peculiar value other than that which is common to woodland tracts of similar types, namely, for timber, cordwood, fuel and conserving of the soil, ponds and streams"?

In *Hoyt* v. *Southern New England Telephone Co.,* 60 Conn. 385, 22 Atl. 957, it appeared that the plaintiff owned and had cared for an ornamental shade tree, planted by an ancestor, and standing in the outer edge of the sidewalk in front of a lot with no building on it, and then being used only for mixing tar and gravel for sidewalks, and enclosed by a high board fence. The defendant cut the top from the tree without permission from the owner, leaving the tree alive, but destroying its symmetry. In the suit which followed, the defendant claimed the compensation to the

plaintiff should be fixed by "the value of the tree for timber or firewood," which did not exceed $5.

In considering the rule of damages in that case, this court said: "That valuation should be adopted which will be most beneficial to the injured party; for he was entitled to the benefit of the premises intact, and to the value of any part separated." We quoted, with approval, *Van Deusen* v. *Young*, 20 Barb. (N. Y.) 19: "Surely the damages would not be in all cases accurately measured by the market value of the wood or timber when cut. The trees might be a highly valuable appendage to the farm for the purpose of shade or ornament; or for other reasons they might have a special value as connected with the farm, altogether independent of and superior to their intrinsic value for purposes of building or fuel. As well might you remove the columns which support the roof or some part of the superstructure of a splendid mansion, and limit the owner in damages to the value of these columns as timber or cordwood, as to adopt the parallel rule in this case." The court found, in the *Hoyt* case, that the lot, as a place for the mixing of tar and gravel, for which it was then used, had not been reduced in value. We pointed out that that use was temporary, and that the character of the lot could not be disparaged or fixed by such use, to which an ornamental shade tree added no value, and we said: "The determining factor in such a case can never be the mere temporary use, but rather the real purpose for which the land is available and valuable," and the lot was " 'available and valuable as a site for a high class of buildings.' "

It appears in the present case that this entire tract was bought for $140,000 for the purposes of the school which, among other things, required the use of the forest land, and that buildings therefor have since been

erected thereon at large cost. Thus the availability of the tract for such school purposes is established. While the market value of the property is generally found to provide adequate compensation to the owner, yet there are cases in which such market value does not indicate the real value to the owner, and others where the property has no real "market value." The case at bar could, not unfairly, be claimed to fall within the first of these exceptions. What a farmer or woodsman would fix as its market value, would not be a fair indication of its value for a game preserve, or for a forestry school or other special purpose. The statute aims to give the owner just and fair compensation for the loss caused him by the fires, and this is the paramount consideration in the estimation of damages. The rule of market value, generally applied, is and should be subordinate to this main consideration.

In *Barker* v. *Lewis Storage & Transfer Co.*, 78 Conn. 198, 31 Atl. 363, we said that while the market-value rule was commonly applied, "the principal rule, which seeks to give fair compensation for the loss, is the paramount one, and ordinarily when the subordinate one fails to accomplish the desired result it yields to an exception or a modification." The owner in such case "ought not to be restricted to the price which could be realized by a sale in the market, but he should be allowed to recover the value *to him* based on his actual money loss, all the circumstances and conditions considered, resulting from his being deprived of his property, not including, however, any sentimental or fanciful value which he may for any reason place upon it." See also Sutherland on Damages (3d Ed.) Vol. 1, § 12, Vol. 4, § 1117; 2 Joyce on Damages, § 1037; 1 Sedgwick on Damages (8th Ed.) § 251. The court erred in its conclusion as to the

standard of value to be applied to this property of which these trees were a part, and to the trees themselves.

The fourth count of the complaint seeks the intervention of equity, by injunction, to prevent future fires from the same source. The plaintiff's contention is that certain methods of operating its trains which are followed by the defendant, subject the property of the plaintiff to the constant risk of loss by future fires, and constitute a nuisance subject to the jurisdiction of the courts, and that the plaintiff is entitled to a mandatory injunction or other equitable relief.

Plaintiff assigns as error the exclusion of the testimony of Howard, who was one of the experts called by the plaintiff. The purpose of the question appears to have been to lay the foundation for showing that the present practice of the defendant was unreasonable. He was asked as to the practice of the railroads in the State of New York, as to the fuel used on locomotives and whether he had an opinion as to the probability of fires from locomotives using oil as a fuel, what his observation was as to the frequency of fires where different types of fuel were in use, and what measures were used in New York State to prevent forest fires. This was objected to as incompetent, immaterial and irrelevant, and sustained by the court.

Plaintiff's witness Leavitt, having been qualified, was inquired of as to what is required of the railroads in Canada with respect to the prevention of fires and the instrumentalities used, and whether the use of oil in locomotives is a proper method to be employed for the prevention of forest fires. These questions were, on objection, excluded upon the same general grounds, and because of lack of similarity of conditions, and of the irrelevancy of the standard used in Canada. Likewise the plaintiff, having qualified its witness Woolsey,

inquired of him whether the railroads passing through the Coconino National Forest, in which he had been a forest assistant as well as upon the board passing on fire protection in this forest, used oil in their locomotives. He was asked as to his opinion of the effectiveness of fuel oil and patrols, of electricity and of the running of trains at night for this purpose. These inquiries were excluded as incompetent, irrelevant and immaterial. The witness was also asked whether, assuming as true, the facts which the plaintiff claimed to have proved, and which were recited in the question, the operation of the defendant's road by the use of bituminous coal through the plaintiff's property was a safe and proper method of operation. This question was further objected to as a violation of the rights and charter of the defendant, on the ground that it was an administrative matter, and as including an assumption as to patrols, not in evidence, and further that the witness was not qualified. The court excluded the evidence.

The plaintiff having offered evidence of repeated fires set by the defendant's locomotives, contiguous to plaintiff's property, inquired of Regan, the general superintendent of that part of the defendant's road which included this section, as to the number of miles of the defendant's system on which electricity and gasoline were used as motive power, as to the danger from the use of oil and whether he knew the use of bituminous coal at night only, was a fire preventative. All these questions were, on objection, excluded.

When equitable relief is demanded a considerable latitude in the presentation of evidence should be permitted, commensurate with the far-reaching limits of that subject, and its proper use should be governed by basing the relief granted or denied upon the exercise

of a sound discretion by the trier. *Kasper* v. *Dawson,* 71 Conn. 405, 42 Atl. 78; *Hoadley* v. *Seward & Son Co.,* 71 Conn. 640, 42 Atl. 997.

Evidence which tended to show that the defendant's railroad could be operated by another method which would tend to lessen the liability of fires upon adjoining property, was relevant and admissible, as a foundation for further evidence on the question of negligence and unreasonable use as a basis for equitable relief. Whether in other jurisdictions different methods were used might thus tend to prove defendant's practice unreasonable and negligent. It was a proper way. to enlighten the trier as to what was good practice upon railroads, and put him in possession of facts and expert opinions essential to a just disposition of the case. *Ferrie* v. *Sperry,* 85 Conn. 337, 343, 82 Atl. 577; *State* v. *Sebastian,* 81 Conn. 1, 3, 69 Atl. 1054.

The purpose of the plaintiff indicated by the questions asked was a legitimate one, and the evidence should have been admitted. Its exclusion violated two cardinal rules upon which our law of evidence is based.

(1) One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. *State* v. *Sebastian,* 81 Conn. 1, 3, 69 Atl. 1054.

(2) Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. Evidence is admitted, not because it is shown to be competent, but because it is not shown to be incompetent. No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and

judicial experience.    Thayer's Cases on Evidence (2d Ed.) 2, 3.

As a new trial must be granted, we do not pass upon other rulings on evidence, nor upon the corrections of the finding, nor upon the questions raised under the claims for equitable relief.

There ·is error and a new trial is ordered.

In this opinion the other judges concurred.