**UNITED STATES of America ex rel. Robert HARRIS, Petitioner-Appellant,**

v.

**STATE OF ILLINOIS, Respondent-Appellee.**

**No. 71–1242.**

United States Court of Appeals, Seventh Circuit.

March 17, 1972.

Robert Harris, pro se.

William J. Scott, Atty. Gen., Chicago, Ill., for respondent-appellee.

Before SWYGERT, Chief Judge, SPRECHER, Circuit Judge, and DILLIN, District Judge.*

PER CURIAM.

Petitioner applied for habeas corpus relief on several grounds, the principal one being that an in-court identification was unconstitutionally tainted by an earlier improper and suppressed line-up identification.

The district judge denied the application for a writ of habeas corpus. We affirm and adopt as the opinion of this court the memorandum opinion of the district court which follows in the appendix.

APPENDIX

Petitioner is presently incarcerated in the Illinois State Penitentiary, Menard Branch, serving a term of six to ten years imposed for the offense of armed robbery on June 25, 1968. He was tried and convicted by a jury in the Circuit Court of Cook County. He alleges as grounds for habeas corpus relief that his conviction is unconstitutional in that 1) an in-court identification was fatally tainted by an improper line-up, 2) there was a fatal variance between the indictment and the proof, 3) the trial court committed reversible error by refusing to allow petitioner to exhibit to the jury his lack of teeth without waiving his privilege against self-incrimination, and 4) the trial court committed reversible error by admitting into evidence proof of another crime.

Petitioner has presented these specific allegations to the Illinois Supreme Court in a direct appeal of his conviction. Because that Court believed these contentions to have no merit, People v. Harris, 46 Ill.2d 395, 263 N.E.2d 35 (1970), petitioner will be deemed to have exhausted his state remedies as required by 28 U.S.C. § 2254. Kemp v. Pate, 359

---

* District Judge S. Hugh Dillin of the Southern District of Indiana is sitting by designation.

F.2d 749 (7th Cir. 1966). We will therefore consider petitioner's contentions on their merits.

I

The petitioner's first contention concerns an in-court identification of himself by a Mr. John Doyle, the pharmacist of the drug store which petitioner was charged with robbing. He asserts that the trial court used a constitutionally improper evidentiary standard in determining that Doyle's in-court identification of petitioner was based upon observations independent of, and not influenced by, a pretrial confrontation which the trial court did hold to be violative of the petitioner's constitutional rights.

The petitioner and his co-defendants in the criminal trial, two women, were arrested by police during the mid-afternoon of February 22, 1968, several hours after the robbery occurred. Mr. Doyle had been contacted by the police and was told that there were some suspects they would like him to see. The police positioned Doyle in an automobile outside the police station, where he witnessed petitioner's two co-defendants exiting from a squadrol. Later that evening, Mr. Doyle returned to the police station where he witnessed a show-up of six Negro persons, three men and three women, with petitioner and the two women whom Doyle had viewed earlier in the middle of the group. At this show-up, Doyle identified petitioner and his two co-defendants as the perpetrators of the robbery. No counsel was present at the time of this identification, nor at bond court where Doyle again witnessed the defendants.

■ The petitioner made a motion at his trial to suppress all identification testimony, both the out-of-court and any in-court identification on the basis of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), three decisions of the United States Supreme Court which indicate that Court's concern with the manner in which pretrial identifications are frequently made. These cases establish that a suspect has a Sixth Amendment right to counsel at a pretrial confrontation subsequent to June 12, 1967, and a Fourteenth Amendment right to be free from pretrial identification so unnecessarily suggestive and susceptible to mistaken identification as to deny due process of law.

■ These cases further establish that, even if the State violates a suspect's rights in a pretrial confrontation, in-court identifications may nevertheless be made by witnesses who viewed the suspects at a tainted confrontation, but only if the State establishes that the in-court identification proceeded from a source independent of the prior illegal confrontation. Gilbert v. California, 388 U.S. at 272, 87 S.Ct. 1951, 18 L.Ed.2d 1178; United States v. Wade, 388 U.S. at 240–241, 87 S.Ct. 1926, 18 L.Ed.2d 1149; see also, Clemons v. United States, 133 U.S.App.D.C. 27, 34, 408 F.2d 1230, 1237 (en banc 1968), cert. denied 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).

The trial court, prior to admitting Doyle's in-court identification testimony, held a hearing on petitioner's motion to suppress during the course of Doyle's testimony, but out of the presence of the jury (Tr.[1] pp. 270–332) and suppressed the identifications made at the line-up,

---

[1]. "Tr." refers to the transcript of petitioner's trial proceedings. Although this Court ordered the respondent to produce a copy of this record, because of its extremely lengthy nature and because the only transcribed copy of the trial proceedings was in the hands of the Cook County Public Defender's Office, being used in the preparation of an appeal to the Illinois Supreme Court by one of petitioner's co-defendants, we have accepted the production of this document for our inspection as satisfying our order. This document in excess of 1100 pages has not been made part of this record because of its current need in the state courts.

apparently concluding that the petitioner's constitutional rights under *Wade* had been violated (Tr. p. 325).

In considering the motion to suppress any in-court identifications, the trial court made several statements crucial to the issues herein. In response to a question by defense counsel as to whether the defendant had the burden of establishing that the improper line-up did in fact taint the in-court identification, the court responded, "It is the burden of the defense to do that." (Tr. p. 154). When counsel for both sides suggested at the hearing that the burden of proof was upon the other, the court stated, "The burden does lie on the person filing the petition." (Tr. p. 271). At the hearing, the State's sole case consisted of having Doyle identify petitioner. *All* of the facts concerning the robbery which indicated the circumstances under which Doyle had observed the suspect prior to his identification of petitioner at the line-up came forth on cross-examination by petitioner's counsel. In conclusion, the court stated, "Now as far as the in-court identification is concerned, the witness (Doyle) did make an in-court identification of (petitioner), *and there is no evidence* in the record that this was not an independent identification." (emphasis supplied) (Tr. p. 327)

■ These statements by the trial court necessitate the conclusion that it did utilize an improper evidentiary standard in determining whether the in-court identification was independent of the improper line-up. The court, as petitioner contends, in fact placed the burden on him to prove that the in-court identification was *not* of an independent nature, whereas *Wade* clearly states that the Government is the party that must go forward and sustain its burden of proof by establishing "by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." United States v. Wade, 388 U.S. at 240, 87 S.Ct. at 1939.

The petitioner urged this error upon the Illinois Supreme Court, requesting a reversal of his conviction or, at the least, a remand for the trial court to hold a hearing on the independence of the in-court identification utilizing a proper evidentiary standard. The Illinois Supreme Court made no recognition of this contention other than by finding itself, after a brief review of the circumstances under which Doyle viewed the robber during the course of the crime, that Doyle's in-court identification had an origin completely independent of the pretrial identification at the police station.

The issue presented by petitioner narrows to a determination of the role of a federal court in a habeas corpus proceeding in viewing a state supreme court's finding of independence of an in-court identification after the trier of fact utilized an improper evidentiary standard. Apparently because of the relatively recent nature of *Wade*, we can find no cases properly delineating this role of a federal court.

We must first note that petitioner will have been denied a constitutional right only if the in-court identification in fact was *not of an origin* independent of the tainted line-up. Conversely, no such deprivation to him accrued if the in-court identification was independent of the line-up irrespective of the trial court's error.

■ Because the Supreme Court of Illinois made such a finding of independence, this Court must determine if a reviewing court which does not hear testimony and which only has a cold record in front of it may properly make such a factual determination concerning the constitutional guarantee recognized by *Wade*. One Circuit has already faced and resolved this issue. The Court of Appeals for the District of Columbia Circuit has ruled that when the record is adequate, a reviewing court is itself entitled to resolve the issue of whether an in-trial identification of an accused is based on the witness' observations other than those made at an unconstitutional viewing. United States v. York, 138 U.S.App.D.C. 197, 426 F.2d 1191 (1969); Clemons v. United States, 133 U.S.App.

D.C. 27, 46, 408 F.2d 1230, 1249 (en banc 1968), cert. denied 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969); Williams v. United States, 133 U.S.App.D.C. 185, 409 F.2d 471 (1969); Hawkins v. United States, 137 U.S.App.D.C. 103, 104, 420 F. 2d 1306, 1307 (1969). We agree with this resolution primarily because of the fact that a *Wade-Gilbert* constitutional deprivation accrues solely when an in-court identification is not independent of a tainted line-up and does not accrue merely because one court as opposed to another makes that determination. While we believe that the trial court is the most proper place for that determination to be made, we cannot conclude that such a resolution by a reviewing court when the record is adequate amounts in and of itself to any constitutional deprivation. We thus conclude that, so long as the record was adequate for such action, the Illinois Supreme Court could, under *Wade* and *Gilbert,* determine if the in-court identification had an independent basis. The record before the Illinois Supreme Court thus becomes significant.

Section 2254(d) of Title 28 of the United States Code likewise focuses our attention on the appellate record. That section compels a federal court to presume as correct any determination on the merits of a factual issue made by a state court after a hearing in proceedings to which the applicant for the writ and the state were parties, unless the federal court concludes that such determination is not fairly supported by the record.

A review of the record before the Illinois Supreme Court indicates that enough facts were contained therein to enable the reviewing court constitutionally to determine if the requirements of *Wade* had been met. This conclusion requires us to accept that factual finding as true. The record indicates that the robber was in Doyle's store for approximately fifteen minutes, that the lighting was excellent, that Doyle was as close as four feet to the robber for almost a minute and had a good look at him at that time, that the line-up was within twelve hours after the robbery, and that Doyle had never identified any other person than petitioner. Thus, enough facts were in the record before the Illinois Supreme Court for that Court to use most of the criteria enunciated by the United States Supreme Court in *Wade* for concluding whether an in-court identification was of an origin independent of the tainted line-up, 388 U.S. at 241, 87 S.Ct. 1926, 18 L.Ed.2d 1149.

We cannot conclude from the record that the Illinois Supreme Court's finding was erroneous. We therefore must accept its finding that Doyle's in-court identification of petitioner had an origin completely independent of the pretrial confrontation. Once this conclusion is accepted, we have no choice but to conclude that the petitioner was not deprived of his Sixth and Fourteenth Amendment rights under *Wade* and/or *Gilbert.*

## II

Petitioner's second alleged constitutional deprivation concerns a claimed fatal variance between his indictment and the proof at trial. Specifically, petitioner alleges that his indictment charged, in pertinent part, that he " . . . *by the use of force* and while armed with a dangerous weapon, took One Hundred Fifty Dollars in United States currency from the person and presence of John Doyle," whereas the proof at trial showed that no actual force or touching of individuals occurred in the drugstore which was robbed. Petitioner claims that, although Ill.Rev. Stat., Ch. 38, §§ 18–1, 18–2 defines armed robbery as the taking of property while armed with a dangerous weapon "by the use of force *or* by threatening the imminent use of force," his indictment charged him with "the use of force" while the evidence at trial proved only that he "threatened the imminent use of force." Thus, he claims, the charges in the indictment were not proven.

Although petitioner does not clearly indicate what constitutional right

he claims to have been deprived of, we assume that he is contending that this alleged variance between indictment and proof deprived him of his Sixth Amendment right "to be informed of the nature and cause of the accusation." If petitioner is making this claim, it is not well founded. The only constitutional requisites of an indictment are that it 1) charge all of the essential facts of a criminal offense, 2) inform the defendant of the offense charged with sufficient clarity so that he will not be misled while preparing his defense, and 3) protect the defendant against another prosecution for the same offense. Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); United States v. Bearden, 423 F.2d 805 (5th Cir. 1970). The sufficiency of the indictment is to be determined by practical rather than technical considerations. United States v. Missler, 414 F.2d 1293 (4th Cir. 1969), cert. denied 397 U.S. 913, 90 S.Ct. 912, 25 L.Ed.2d 93.

█ Following this rationale, it has been held that the true inquiry that must be made when a criminal defendant contends that there has been a variance between indictment and proof is whether there has been such a variance as to affect the substantial rights of the accused; if the above-mentioned tests of an indictment have been met, a slight variance is deemed non-prejudicial and not a constitutional impairment to a finding of guilt. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L. Ed. 1314 (1935); United States v. Pile, 256 F.2d 954 (7th Cir. 1958); Calderon v. United States, 269 F.2d 416 (10th Cir. 1959).

█ In the instant case, petitioner was advised by the indictment of the nature of the charges against him so as to enable him to prepare his defense; and had he been acquitted, he could have pleaded the judgment in bar of any further prosecution for the same offense. We thus cannot deem the minor variance between the indictment and proof as a constitutional impairment to petitioner's conviction.

III

█ Petitioner next contends that the trial court's refusal to allow him to "exhibit" to the jury his lack of teeth on one side of his mouth without waiving his privilege against self-incrimination was a violation of his Fifth and Fourteenth Amendment rights, constituting reversible error. Petitioner alleges that the exhibition of his missing teeth to the jury was relevant in attempting to refute the testimony of Mr. Doyle, who, in placing petitioner at the scene of the crime by identification, testified that he noticed nothing unusual about petitioner's mouth.

Petitioner made to the trial court an offer of proof of his mouth, which allegedly was missing eight to ten teeth on the side. He argued that since this exhibit was nontestimonial in nature, he should not be opened to cross-examination. However, the trial court ruled that the State should be able to ask the petitioner some questions about the teeth without going beyond that point. (Tr. pp. 641–643). The trial court observed that no showing had been made that the petitioner opened his mouth in the drugstore in the same manner he wished to do before the jury and that it would only be fair for the State to see what he in fact did do in the drugstore. Further, it was important for the State to have been permitted to inquire how long these teeth had been missing, it being entirely possible that petitioner had lost the teeth subsequent to the commission of the crime. Also, the State was held to be entitled to determine whether the petitioner had a dental bridge which would replace the missing teeth, and, if so, whether he had been wearing this bridge on the day of the crime.

In light of the court's ruling, counsel for petitioner chose not to introduce the "exhibit" into evidence. Thus, petitioner was never exposed to cross-examination of any sort.

█ The State presently contends, and we agree, that a defendant in a criminal trial may not introduce evi-

dence in his defense without laying a proper foundation therefor. The effect of the trial court's ruling was to require the defense to lay a proper foundation for the evidence that it wished to offer. Even if we wished to disagree with this evidentiary ruling, we would not interfere by means of habeas corpus with a state ruling when errors involved therein cannot reasonably be said to involve a deprivation of constitutional rights. "The admissibility of evidence . . . [is a matter] of state law and procedure not involving federal constitutional issues. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented. The role of a federal habeas corpus petition is not to serve as an additional appeal." Grundler v. State of North Carolina, 283 F.2d 798, 802 (4th Cir. 1960); Lewis v. Peyton, 291 F.Supp. 753, 756 (W.D.Va.1968).

The ruling of the trial court permitting the State to cross-examine within the scope of the evidence sought to be introduced thus being a matter of state law, and the doctrine of fundamental fairness not being violated, petitioner's constitutional right to due process was not violated. Because petitioner was not compelled to be a witness against himself, and because he was required merely to answer questions relating to the teeth if he desired to offer his mouth as an "exhibit" into evidence, his Fifth Amendment rights were not violated. Petitioner, therefore, must be denied habeas corpus relief under this claim.

## IV

Petitioner's final contention is that the trial court committed reversible error in admitting into evidence proof of another crime. This proof consisted of certain statements made by Officer Sidney Wilbon and the rebuttal testimony of Edna Mae Dwyer.

■ Generally, evidence of prior criminal acts of a defendant which are not charged in the indictment is inadmissible. However, such evidence is clearly admissible if it is relevant unless its probative value is outweighed by its prejudicial effect. United States ex rel. Durso v. Pate, 426 F.2d 1083 (7th Cir. 1970). Generally, however, the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved. Grundler v. State of North Carolina, supra.

The recent opinion of the Seventh Circuit in Durso, supra, is highly relevant in determining the constitutional effects of admission of evidence of "other crimes" into a state criminal trial. The Court of Appeals appears to have indicated that the test for determining whether a defendant's constitutional right to a fundamentally fair trial has been violated by the admission of evidence of other crimes is the same as would be applied by a reviewing court on direct appeal in determining whether the admission of such evidence was within the permissible exercise of discretion of the trial court. "When it must be said that the probative value of such evidence, though relevant, is greatly outweighed by the prejudice to the accused from its admission, then the use of such evidence by a state may rise to the posture of the denial of fundamental fairness and due process of law." 426 F.2d at 1086. We presume that the Court of Appeals did not intend to abolish the general rule that evidentiary questions are not subject to review by a federal court in a habeas corpus proceeding initiated by a state prisoner unless there is an error of such magnitude as to deny fundamental fairness to the trial proceedings. Grundler v. State of North Carolina, supra. To hold otherwise would put the federal courts in the role of reviewing courts over the courts of the states even when no constitutional errors have been made. We thus conclude that if there was no prejudice to petitioner by the admission of the complained of testimony, there will have been no constitutional harm for which he can here seek relief.

The Court of Appeals acknowledged that no precise rules can be laid down in this area. Therefore, the statements and testimony to which petitioner objects must be analyzed to determine if their probative value and relevance were outweighed by prejudice to the petitioner of a magnitude substantial enough to present a constitutional issue.

Concerning the testimony of Officer Wilbon, the statements complained of were brought out by petitioner's trial counsel during cross-examination. (Tr. p. 467). Officer Wilbon, and his partner, the arresting officer, had had their attention drawn to the car which the petitioner was driving because of an excessive rate of speed at which it had been traveling. The petitioner attempted to elude the officers after they began pursuing him, and the officers noted that the car was identical to one stolen earlier that morning. The questions posed by petitioner's counsel immediately preceding the statements in issue made by Officer Wilbon concerned the car which petitioner had been driving. When asked if he knew what had been taken in the armed robbery, the officer replied: "We knew a car was taken." (Tr. p. 467). This is the statement that petitioner here complains of as being evidence of other crimes.

A reading of the record makes it appear quite obvious that the officer thought counsel was referring to the armed robbery in which the car had been stolen. After counsel clarified that he was referring to the robbery of the drugstore, Officer Wilbon acknowledged that he knew that money had been taken in that robbery (Tr. p. 468). We cannot believe that any prejudice accrued to the petitioner from these statements made by Officer Wilbon in answering questions of petitioner's counsel. As we conclude that *Durso* dictates a reversal on constitutional grounds only if petitioner was prejudiced to a degree that denied him fundamental fairness in his

trial, we further conclude that the admission into evidence of Officer Wilbon's testimony did not deny petitioner due process of law.

The second group of statements which petitioner objects to as evidence of other crimes unconstitutionally submitted to the jury consists of testimony given by Edna Mae Dwyer, brought forth in rebuttal by the State after the defendant had rested his case. Mrs. Dwyer testified that on the date in question (the date of the robbery at the drugstore), she owned an automobile of a specific description, with a specific set of license plates attached to it. Without ever stating it, she in effect testified that she owned the car which petitioner was driving at the time of his arrest. She further testified that she saw the petitioner and his two co-defendants at 9:30 A.M. on that morning. The State attempted to ask directly into the nature of her encounter with the three defendants, but the trial court, aware that the defendants had allegedly stolen the car from her at gunpoint, sustained petitioner's counsel's objections to these questions.

The thrust of petitioner's objections herein to this testimony is that it had no probative value as rebuttal of any alibi of petitioner since petitioner had not testified at all and had presented no alibi defense, whereas this testimony did have a prejudicial effect on the jury by bringing in evidence of an unrelated crime. The trial record, however, refutes the contention that this evidence had no probative value.

 Prior to the giving of this allegedly tainted testimony, petitioner's counsel had asked the trial judge at a conference on instructions for a jury instruction regarding an alibi for petitioner. (Tr. pp. 872, 874, 876–878, 893–894). The trial court was reluctant to grant such an instruction because no alibi had been established for petitioner.[2] However, petitioner's counsel vig-

2. At trial, evidence had been introduced that one of petitioner's codefendants did not leave home until 10:30 or 11:00 A.M., thus, offering an alibi for her for the rob-
bery of the drug store that occurred at 10:20 A.M. Petitioner, however, had presented no such alibi defense.

orously argued for an alibi by inference, in that if petitioner was allegedly seen with his co-defendant at the time of the robbery and the co-defendant was in fact not there under her alibi, then by circumstantial evidence, petitioner likewise had an alibi. (Tr. pp. 872, 874, 893). The trial court did not at first accept this line of reasoning, but later was convinced by petitioner's counsel, changed its mind, and in fact granted an alibi instruction. (Tr. pp. 893, 1009).

Following this conference, the State offered to put Edna Mae Dwyer on the stand in front of the jury to refute petitioner by inference (as well as the alibi of his co-defendant, who was being tried by the judge). Petitioner's counsel objected to the testimony going to the jury for the very reason that petitioner had not presented any alibi defense, thus claiming, as he does here, that such testimony had no probative value as to the petitioner. The trial court disagreed, however, ruling that petitioner in fact was presenting, as per counsel's argument in the conference on instructions, a circumstantial alibi defense and that the State was entitled to rebut it. (Tr. pp. 921–929). The Court, however, cautioned that the auto robbery was never to be mentioned in this testimony designed to rebut the alibi defense.

This review of the record makes it clear that the rebuttal testimony given by Edna Mae Dwyer was necessitated by the alibi defense raised by petitioner. Since this evidence was necessary for the State to prove its case, or at least to rebut the "circumstantial alibi" pursued so vigorously by petitioner's counsel, the probative value outweighed any prejudicial effect. We further note that no direct evidence of other crimes was admitted, but merely the description by Mrs. Dwyer of her car and its license plate number, which did match the description of the car driven by petitioner at the time of his arrest. Because the prejudicial effect, if there was any at all, is outweighed by the probative value of the testimony, the introduction of this testimony did not rise to the level of a denial of fundamental fairness or due process of law guaranteed by the Fourteenth Amendment. Hence, under *Durso, supra,* no constitutional question is presented.

Because petitioner has failed to state any meritorious claim for habeas corpus relief, his petition must be denied. An appropriate order will enter.