STATE OF CONNECTICUT *v.* JAMES FLANDERS
(13344)

PETERS, C. J., HEALEY, GLASS, HULL and SANTANIELLO, Js.

Argued January 9—decision released April 10, 1990

*Ronald Gold,* assistant public defender, for the appellant (defendant).

*Susan C. Marks,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Herbert Carlson, Jr.,* assistant state's attorney, for the appellee (state).

SANTANIELLO, J. The defendant, James Flanders, was charged by information on January 23, 1987, with the crimes of murder in violation of General Statutes

§ 53a-54a[1] and felony murder in violation of General Statutes § 53a-54c.[2] On October 13, 1987, the information was amended, and he was charged with a third count, burglary in the second degree in violation of General Statutes § 53a-102 (a).[3] After a jury trial, the

[1] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

[2] "[General Statutes] Sec. 53a-54c. "FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

[3] "[General Statutes] Sec. 53a-102. BURGLARY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein."

defendant was acquitted of murder and convicted of both felony murder and burglary in the second degree. He was sentenced to an effective term of imprisonment of sixty years. On appeal, he claims that the trial court erred in: (1) refusing to admit into evidence statements made by the victim claimed to be admissible under the spontaneous utterance exception to the hearsay rule; (2) refusing to order the state to file a supplemental bill of particulars, thus denying him the right to notice of the charges against him in violation of his rights as guaranteed by the United States and Connecticut constitutions; and (3) failing to charge the jury on felony murder as requested, thus denying him his constitutional right to a unanimous verdict as guaranteed by the United States and Connecticut constitutions. We find no reversible error.

The jury could reasonably have found the following facts: Wladyslaw, Stanislaus, and Jan Brzoska were Polish immigrants who lived together in a third floor apartment at 174 Broad Street in New Britain. Wladyslaw and Stanislaus were brothers, and Jan was their cousin. They spoke little English. On Saturday, September 20, 1986, they attended the New Britain Harvest Festival together. While returning home between 1 and 1:30 a.m., Wladyslaw and Stanislaus, both of whom were feeling the effect of alcoholic beverages consumed that evening, were approached by a black woman, Annette Conaway, at a street corner near their apartment.

Conaway had met with the defendant, James Flanders, shortly before her encounter with Wladyslaw and Stanislaus. He had asked her what she was doing, and after she stated that she was waiting for some drunk men to come along so that she could hustle them, the defendant stated, "Well, I'm going to stay with you." She replied, "I don't care."

When Conaway saw the two Brzoska brothers approaching, she walked across the street to speak with them. She was invited to their apartment, and she and the men walked across the street and into the alley leading to the apartment. While accompanying the brothers, she gave the defendant a wave, which he took to mean "come on." After arriving at the brothers' apartment, Conaway went to the kitchen and poured three glasses of vodka. Stanislaus gave a $20 bill to Conaway, and she went into Stanislaus' bedroom with the two brothers where discussions ensued. Stanislaus changed his mind and asked for the $20 back, but Conaway refused to comply. Looking from the bedroom door, she saw the defendant standing next to the refrigerator attempting to lift a television set that was in the kitchen. She was not surprised to see the defendant in the kitchen because, "We was hustling together." Conaway and the two brothers argued for a period of time about her failure to perform promised services and the return of the $20. Conaway and Wladyslaw moved from the bedroom into the kitchen and continued to argue about the return of the money. Stanislaus remained in the bedroom and went to sleep. Conaway finally gave Wladyslaw two $1 bills. He was upset and remonstrated, pantomiming about getting a knife and stabbing "somebody's eyes out." Conaway left the apartment and went across the street to wait for the defendant near a furniture store.

At the time Conaway left the apartment, she did not know where the defendant was, although at one point she saw him walk in the direction of the apartment exit door. About one hour later, Conaway returned to the apartment because, "I knew I had poured that vodka in the glasses. I knew my fingerprints would be on the glasses." She got on her knees to look under the kitchen door. She saw Wladyslaw lying on the floor with blood on his chest.

At or about the same time, Stanislaus was awakened from his sleep by the sound of his brother moaning the word "oye." Stanislaus went into the kitchen where he found his brother lying on the floor, the victim of a stab wound to the chest area. Stanislaus asked his brother what happened. "[T]hen he said that to this black-to this charnota, I was stabbed." Wladyslaw then asked Stanislaus to call his sister and an ambulance. As Stanislaus was calling their sister, Regina Deblowski, his cousin, Jan Brzoska, returned to the apartment. When Regina arrived at the apartment, she saw Wladyslaw lying on the floor and heard him say, "Oh, mother of God," and then he said nothing further. Regina then called her sister-in-law, Janina Brzoska, and within ten to fifteen minutes, Janina and her husband arrived at the apartment. Shortly thereafter the police were called. Wladyslaw, who was unconscious, was treated and removed by emergency medical technicians to New Britain General Hospital where he died.

At trial, the state presented four witnesses who testified that the defendant made certain admissions to them. Eddie Rose, Jr., testified that he spoke with the defendant by telephone after September 21 and that the defendant had said, "Four guys were coming at me and one had a knife." He further said, "I had to jug one with a knife." Lois Brown testified that the defendant had told her that he grabbed a man's wrist and stabbed him with the man's own knife and that this had taken place on Broad Street. Shirley Williams testified that she was walking in New Britain late on September 20 or early September 21, when she encountered the defendant running. In response to her questions, the defendant said that he and Annette Conaway had been at a house on Broad Street. Several men had tried to attack them and he had stabbed one of them with a kitchen knife. Willie Holley testified that he was

present when Shirley Williams and the defendant had their conversation and confirmed Williams' testimony.

When the defendant was arrested, he was found hiding in a closet in his brother's apartment. Testimony at trial revealed that the defendant's partial palm print was found on the refrigerator in the kitchen where the victim was stabbed.

The defendant claimed that he had gone directly home after leaving the apartment and denied having seen Shirley Williams and Willie Holley on the evening of the stabbing. He also denied having made the incriminating statements attributed to him by Eddie Rose, Jr., and Lois Brown.

The defendant offered the testimony of Jan Brzoska regarding statements made to him by the victim after the stabbing had occurred. The state objected on the ground of hearsay, and the trial court sustained the hearsay objection. The defendant's offer of proof outside the presence of the jury disclosed that the victim had allegedly said "black whore" and "I was stabbed by a whore," in Polish to Jan Brzoska before the arrival of the medical personnel. The defendant had argued that the statements were admissible under the spontaneous utterance and dying declaration exceptions to the hearsay rule.

The defendant's first claim is that the trial court erred in excluding the testimony of Jan Brzoska regarding the statements made by the victim that allegedly implicated Conaway in the death of the victim. The offer of proof disclosed that Jan Brzoska had heard the victim say the words "kurwa czarnota" after the stabbing had occurred. A New Britain police officer testified that he had taken a statement from Jan Brzoska on September 22, 1986. In that statement the victim was reported to have also said "przebity bylem przez kurwa" as he lay on the kitchen floor. A Polish inter-

preter testified during the offer of proof that "kurwa czarnota" had the English meaning of "black whore," and the statement contained in the police report meant "I was stabbed by a whore." The trial court sustained the hearsay objection to the testimony.

The state has conceded error by the trial court in excluding the testimony, but asserts that it is harmless error. The allocation of the burden of proof under harmless error analysis depends on whether the error reaches the level of a constitutional violation. If the error is of constitutional magnitude, then the burden is on the state to prove that this error was harmless beyond a reasonable doubt. *Chapman* v. *California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967); *State* v. *Green,* 207 Conn. 1, 9, 540 A.2d 659 (1988). The defendant argues that the trial court's evidentiary ruling denied him the right to present a defense and his right to a fair trial in violation of the sixth and fourteenth amendments to the United States constitution and article first, 8 of the Connecticut constitution.[4] Despite these claims, we decline to characterize the error as constitutional.

Whether a trial court's erroneous restriction of a defense witness' testimony in a criminal trial deprives a defendant of his due process rights is a question that must be answered on a case-by-case basis. *State* v. *Jones,* 205 Conn. 723, 731, 535 A.2d 808 (1988). " 'Generally, "the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional

---

[4] Due process claims under the federal and state constitutions can be treated together because they impose similar constitutional limitations. *Keogh* v. *Bridgeport,* 187 Conn. 53, 59–60, 444 A.2d 225 (1982). The defendant offers no argument for separate treatment of his state constitutional claim. Accordingly, we will consider only his federal constitutional claim. *State* v. *Mercer,* 208 Conn. 52, 67 n.9, 544 A.2d 611 (1988).

right, no constitutional issue is involved." *State* v. *Periere,* [186 Conn. 599, 611, 442 A.2d 1345 (1982)], quoting *United States ex rel. Bibbs* v. *Twomey,* 506 F.2d 1220, 1222 (7th Cir. 1974).' *State* v. *Talton,* 197 Conn. 280, 289–90, 497 A.2d 35 (1985)." *State* v. *Vilalastra,* 207 Conn. 35, 46, 540 A.2d 42 (1988).

The defendant claims that the exclusion of exculpatory testimony denied him the right to a fair opportunity to defend against the state's accusations, citing *Chambers* v. *Mississippi,* 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). We do not agree. The excluded testimony concerned the identity of the person who caused the death of Wladyslaw Brzoska. In a prosecution for murder this evidence would be exculpatory. In the present case, however, the defendant was acquitted of murder[5] and convicted of felony murder and burglary. The issue is whether the erroneous exclusion of testimony deprived the defendant of a fair opportunity to defend the felony murder and burglary charges.

The felony murder statute does not require that the defendant commit the homicidal act, but instead requires that "[the defendant], or another participant, if any, causes the death of a person other than one of the participants." General Statutes 53a-54c. The excluded evidence is exculpatory only if it indicates that neither the defendant nor any participant in the felony caused the death. The testimony implicating Conaway as the person who stabbed the victim does not provide a defense to felony murder because there was a basis in the evidence for the jury reasonably to have found that Conaway was a participant in the felony. There was testimony that Conaway met with the defendant and signaled to him prior to entering the apartment.

---

[5] The acquittal on the murder charge indicates that the jury had reasonable doubt as to whether the defendant caused the death of the victim.

Conaway knew the defendant was in the apartment and saw him attempting to lift a television set. Shirley Williams testified that the defendant told her that he had been with Conaway in the apartment. The excluded evidence, if it has any probative value on the question of whether Conaway was a participant in the burglary, further establishes her joint participation in the events that occurred in the early morning hours of September 21, 1986. Under these circumstances, it is our view that the error was not of constitutional magnitude.

When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the error. *State* v. *Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980). We conclude that the defendant has failed to show that the erroneous action of the court would have been likely to affect the result. *State* v. *McClain* 171 Conn. 293, 300, 370 A.2d 928 (1976). In light of all the other highly incriminating evidence presented against the defendant, we deem it highly unlikely that, if the testimony had been admitted into evidence, the jury would have reached a different verdict.

The defendant's next claim is that the trial court erred in denying his pretrial motion for a supplemental bill of particulars. The second count of the substitute information alleged that the defendant "or another participant, if any, caused the death of Wladyslaw Brzoska." On October 15, 1987, the defendant filed a motion for a supplemental bill of particulars to identify any other participants and to specify whether any other participant was alleged to have caused the death of Wladyslaw Brzoska. The trial court denied the motion. The defendant contends that the trial court's failure to grant his motion for a supplemental bill of particulars denied him his right to notice of the charges against him and denied him a fair opportunity to present a defense.

" 'The function of the bill of particulars under Connecticut practice is to enable the defendant to obtain a more precise statement of the offense charged in the information in order to prepare a defense.' *State* v. *Troynack,* 174 Conn. 89, 96, 384 A.2d 326 (1977)." *State* v. *Stepney,* 191 Conn. 233, 240, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). The denial of a motion for a bill of particulars is within the sound discretion of the trial court and will be reversed only upon a clear showing of prejudice to the defendant. *State* v. *Brown,* 173 Conn. 254, 257, 377 A.2d 268 (1977). The defendant bears the burden of showing why the additional particulars were necessary to the preparation of his defense. *State* v. *DiBella,* 157 Conn. 330, 339, 254 A.2d 477 (1968); *State* v. *Curtis,* 146 Conn. 365, 367, 151 A.2d 336 (1959).

We are unable to find any prejudice against the defendant because of the trial court's denial of his motion. The language in the substitute information sets forth the requirements of the felony murder statute. The defendant had a precise statement of the offense charged, and a fair opportunity to present a defense. A charge of felony murder does not require that the state specify whether the defendant or a participant in the felony caused the death. The defendant argues that the failure to inform him whether there were any coparticipants denied him an opportunity to present a defense, but he fails to provide any support for this argument. The preparation of his defense did not depend on the identification of alleged participants in the substitute information. The defendant cannot claim that he was unaware of the possibility that a jury might consider Conaway to be a participant in the alleged burglary. Under such circumstances, we conclude that the trial court did not abuse its discretion in denying the defendant's motion.

The defendant's final claim is that the trial court erred in failing to charge the jury that it must unanimously agree on the mode and manner of the death of Wladyslaw Brzoska. Under the jury instructions requested by the defendant, the jury would have had to be unanimous as to whether the defendant caused the death or whether a participant caused the death. The trial court gave a general unanimity charge that the jury must be unanimous that the defendant or another participant caused the death of the victim.

The defendant relies on *United States* v. *Gipson,* 553 F.2d 453 (5th Cir. 1977), and *State* v. *Benite,* 6 Conn. App. 667, 671, 507 A.2d 478 (1986). The unanimity requirement as stated in *Gipson* requires the jury to agree on the factual basis of the offense. *State* v. *Bailey,* 209 Conn. 322, 334, 551 A.2d 1206 (1988). When one of several alternative acts would subject a defendant to criminal liability, a unanimity charge on a specific act is required if the alternative acts are conceptually distinct and the state has presented supporting evidence on each alternative act. Id.; *State* v. *Benite,* supra, 674–75.

These cases are not persuasive in the present case. This court has held that principal liability and accessory liability are not "conceptually distinct" under *Gipson* and its progeny. *State* v. *Smith,* 212 Conn. 593, 605, 563 A.2d 671 (1989). In *Smith,* the defendant claimed that the trial court erred in failing to instruct the jury in a prosecution for murder that it must be unanimous on whether the defendant had been a principal or an accessory. The court, applying the analysis used in *United States* v. *Petersen,* 768 F.2d 64 (2d Cir.), cert. denied, 474 U.S. 923, 106 S. Ct. 257, 88 L. Ed. 2d 264 (1985), found that "in a case involving potential accessory liability, the jury should be regarded as unanimous even if some jurors believed that the defendant was an aider and abetter, while other jurors believed that he

was the principal . . . ." *State* v. *Smith,* supra. The language of the felony murder statute clearly supports this conclusion because it provides for liability if a death is caused by *any* participant in the underlying felony. The statute does not provide conceptually distinct theories of liability based on which participant caused the death. We conclude that in a prosecution for felony murder a general unanimity charge is sufficient.

There is no error.

In this opinion the other justices concurred.