James FLANDERS, Petitioner–Appellee,

v.

Larry R. MEACHUM, Commissioner of Corrections, Respondent–Appellant.

No. 523, Docket 93–2395.

United States Court of Appeals,
Second Circuit.

Petition for Rehearing Submitted
Jan. 25, 1994.

Decided April 13, 1994.

Gary D. Weinberger, Asst. Federal Public Defender, Hartford, CT (Thomas G. Dennis, Federal Public Defender, Hartford, CT, of counsel), for petitioner-appellee.

Before: VAN GRAAFEILAND and WINTER, Circuit Judges, and KNAPP, District Judge.*

Circuit Judge WINTER concurs in the denial of the petition.

WINTER, Circuit Judge, concurring in the denial of the petition for rehearing:

James Flanders, in a strongly worded petition for rehearing that charges us with having "distorted the facts and the law," asks us to reconsider our decision in *Flanders v. Meachum*, 13 F.3d 600 (2d Cir.1994). My colleagues have voted to deny that petition without opinion. Although I remain satisfied that Judge Van Graafeiland's opinion correctly and thoroughly disposes of this matter, I write as a member of the panel in response to certain arguments made in the petition. I assume familiarity with our prior opinion.

Flanders argues first that the exclusion of the evidence was prejudicial because the jury convicted him of felony murder on the theory

that he stabbed Walter. That contention is belied by the record. The felony-murder conviction of Flanders admits of four explanations. Either the jury concluded that: (i) Conaway killed Walter while participating in Flanders' burglary; (ii) Flanders killed Walter as part of the burglary; (iii) Flanders and Conaway jointly murdered Walter; or (iv) it was indeterminable who killed Walter but the identity of the killer was irrelevant because the killing was done in the course of Flanders' burglary. If the jury found (i) or (iii), exclusion of the testimony obviously could not have altered the jury's conclusion. Similarly, if the jury found (iv), the evidence could not have affected the verdict because the identity of the killer is irrelevant to this theory of conviction. Therefore, exclusion of the evidence was prejudicial only if the jury, or some of its members, concluded that Flanders did the killing. It is highly unlikely that any juror took this view.[1]

First, as the Connecticut Supreme Court noted, the fact that the jury acquitted Flanders of murder strongly suggests that the jury thought that Conaway, not Flanders, killed Walter. The court thus stated, "The acquittal on the murder charge indicates that the jury had reasonable doubt as to whether the defendant caused the death of the victim." *State v. Flanders*, 214 Conn. 493, 572 A.2d 983, 988 n. 5 (1990). Flanders' counsel directs much obloquy to this statement. However, the statement is essentially correct. It is highly unlikely that any juror concluded that Flanders had accidentally inflicted a single, four-inch deep stab wound in Walter's chest and thus voted to acquit for lack of specific intent. Nor did Flanders argue self-defense or any theory that would negate a finding of specific intent.

Second, as petitioner's papers have emphasized, the conflicting nature of much of the evidence, the implausibility of several details Conaway provided, and the possibility of bias among the State's confession witnesses se-

---

* The Honorable Whitman Knapp, United States District Judge for the Southern District of New York, sitting by designation.

1. Some members of the jury could have taken each of these views. On direct appeal in this case, the Connecticut Supreme Court held that a defendant convicted of felony murder does not have a right to a unanimous jury verdict as to which participant actually killed the victim. *State v. Flanders*, 214 Conn. 493, 572 A.2d 983, 988 (1990).

verely weakened the case that Flanders was the actual killer.

Finally, in the course of deliberations, the jury requested an explanation of the felony-murder instruction on liability for a co-participant's acts. It stated, "There is some question in our minds concerning that part of the second count that states in part—'he or another participant, if any, caused the death.' " After the court repeated its earlier instruction on felony murder (which included the co-participant theory), the jury resumed deliberations and shortly thereafter convicted Flanders of felony murder. This chain of events also strongly suggests that the jury convicted Flanders of felony murder on the theory that Conaway stabbed Walter.

As noted, if the jury found that Conaway did wield the knife, the excluded evidence could not have affected Flanders' conviction for felony-murder because that evidence was consistent with the jury's theory of conviction. Flanders' petition seriously misreads our opinion and Connecticut law in order to avoid this inexorable conclusion. Flanders' counsel thus argues that our opinion "implicitly determin[ed] that James Flanders was a *'co-participant'* in Annette Conaway's *uncharged burglary*," and "brings a new charge against James Flanders *and* engages in appellate fact finding, construing the record in the most extreme manner possible in order to find him guilty beyond a reasonable doubt." (emphasis in original). He is wrong.

The Connecticut felony-murder statute provides that:

A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery [or] burglary ... and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person....

Conn.Gen.Stat. § 53a–54c. Both the charging instrument and the jury instructions in-

cluded the co-participant theory of felony murder. Flanders therefore could have been convicted of felony murder if the jury found Conaway killed Walter in the course of and in furtherance of the commission of Flanders' burglary or flight therefrom.[2] There was ample evidence supporting this theory.

Flanders' own testimony demonstrates beyond any doubt that Conaway was a participant in Flanders' burglary of the Brzoskas' apartment. Flanders was charged with burglary in the second degree, which is the act of entering a dwelling at night with an intent to commit a crime. Conn.Gen.Stat. § 53a–102. Flanders testified that Conaway told him she was planning on swindling some drunk men by pretending to be a prostitute, that Flanders and Conaway agreed that Flanders would go along, that he waited with her for some drunk men to come by, that she signalled Flanders to come in as she entered the apartment building, that shortly thereafter she opened the apartment door to let Flanders into the apartment, and that she kept the brothers occupied in one of the bedrooms while Flanders contemplated stealing a television set. Conaway also testified that she and Flanders were "hustling together." Leaving the door open for Flanders and keeping the brothers occupied in the bedroom while Flanders perused movable items of value was indisputably a participation by Conaway in Flanders' burglary. The fact that Conaway may have been simultaneously committing a second crime in no way undermines this conclusion.

Nor can it be argued that because Conaway may have committed the murder after Flanders' departure, the killing occurred at a time too remote from Flanders' burglary to be "in the course of and in furtherance of [Flanders' burglary] or of flight therefrom." The Connecticut Supreme Court has consistently held that the time-frame pertinent to felony-murder includes those periods prior to and following the actual commission of the crime.

---

**2.** The jury was instructed that a participant is "one who takes part or shares in the underlying crime." This instruction was not challenged on appeal to the Connecticut Supreme Court. Flanders moved for a judgment of acquittal twice on the ground that there was insufficient evidence

that Conaway was a participant in his burglary to allow the co-participant theory of felony murder to go to the jury. Both motions were denied, and Flanders did not challenge these rulings on direct appeal.

In *State v. Rogers,* for example, the Connecticut Supreme Court held that the felony murder statute included "a killing done at any time within a sequence of events directly connect[ed] with a robbery and the escape from the scene of it." 143 Conn. 167, 120 A.2d 409 (interpreting Conn.Gen.Stat. § 8350, predecessor to Conn.Gen.Stat. § 53a–54c), *cert. denied,* 351 U.S. 952, 76 S.Ct. 850, 100 L.Ed. 1476 (1956). More recently, in *State v. Gomez,* the court interpreted the phrase "in the course of" to include killings, "during the continuous sequence of events surrounding the [crime] . . . even though some time immediately before or after . . . ." 225 Conn. 347, 622 A.2d 1014, 1017 (1993) (citation omitted). The phrase therefore "include[s] the period immediately before or after the actual commission of the crime . . . ." *Id.* In *State v. Gunning,* the Connecticut Supreme Court held that there was a sufficient nexus between a felony and a killing when the defendant was last seen with the victim two hours and forty-five minutes before the victim died and several items missing from the victim's house were found in the defendant's possession. 183 Conn. 299, 439 A.2d 339, 347–48 (1981); *see also* Annot., *What Constitutes Termination of Felony For Purposes of Felony–Murder Rule?,* 58 A.L.R.3d 851, 874 (1974).

Given these principles, the conclusion is inescapable that the murder at issue here was in part "in the course of and in furtherance of" Flanders' burglary or flight therefrom. Although it is true that Conaway also planned to defraud money from the Brzoskas through her prostitution scam, those actions were an integral part of her participation in Flanders' burglary of the Brzoskas' apartment and her flight therefrom. There were thus two interrelated crimes going on simultaneously in the Brzoskas' apartment. The prostitution scam was designed both to defraud the Brzoskas of money *and* to facilitate Flanders' burglary after Conaway let him into the apartment surreptitiously and while she was distracting the Brzoskas. The fact that Flanders may have left the apartment before the murder by no means terminated Conaway's participation in his crime under Connecticut law, and whatever violence attended her leaving the apartment was part of Flanders' crime as well as the fraud. Under Connecticut law, burglars who gain entry through the presence of a person in the dwelling who surreptitiously facilitates the entry and distracts the occupants are responsible for the murderous acts of that person at least until that person exits the dwelling.

Finally, the issues of whether Conaway was a "participant" and whether the killing was "in the course of" Flanders' burglary are disputes over Connecticut law that have been resolved against Flanders and are not cognizable in this federal habeas corpus proceeding. *Wainwright v. Sykes,* 433 U.S. 72, 82, 97 S.Ct. 2497, 2504, 53 L.Ed.2d 594 (1977); *Pitts v. Lockhart,* 911 F.2d 109, 111–12 (8th Cir.1990) (question of whether crime was committed in furtherance of felony is a state law claim not cognizable on habeas review), *cert. denied,* —— U.S. ——, 111 S.Ct. 2896, 115 L.Ed.2d 1060 (1991). In fact, Flanders' petition acknowledges that he seeks to revisit state law claims, stating:

> The Connecticut Supreme Court agreed with the prosecution [that Flanders could properly be convicted of felony murder on the grounds that Conaway killed Walter as a participant in Flanders' burglary] without considering whether on that theoretical basis the killing would have been *during and in furtherance of his burglary.* It was that flaw in the Connecticut Supreme Court's analysis which was a principal focus of James Flanders' habeas corpus petition.

(emphasis in original).

Moreover, Flanders did not exhaust these claims at the state level. He did not argue to the Connecticut Supreme Court—as he unsuccessfully had during the trial, *see* Note 2 *supra*—that there was insufficient evidence that Conaway was a participant in Flanders' burglary to submit the co-participant theory to the jury or that the murder was too remote in time to be considered "in the course of" Flanders' burglary. In fact, the Connecticut Supreme Court rejected Flanders' claim that he was wrongfully denied a supplemental bill of particulars, noting that "[t]he defendant cannot claim that he was unaware of the possibility that a jury might

consider Conaway to be a participant in the alleged burglary." *Flanders*, 572 A.2d at 989. The district court's statement that "a significant issue existed at the time the case was submitted to the jury as to whether co-participant liability was properly before the jury during its deliberations," *Flanders v. Meachum*, 824 F.Supp. 290, 301 (D.Conn. 1993), is thus an observation about a state law determination—unchallenged in the state appeal—that there was sufficient evidence for purposes of Connecticut law that Conaway participated in Flanders' burglary, and the jury's subsequent determination that Conaway was such a participant. Absent a jury finding that the person who killed Walter was not a participant in Flanders' crime or acting in furtherance of that crime within the meaning of Connecticut law—unlikely findings given Flanders' own testimony—the excluded evidence suggesting that Conaway was the killer could not have affected the verdict.

The injustice in this case is not Flanders' conviction; it is the freedom from prosecution or conviction of Conaway, whom the jury found to be a co-participant. That freedom, however, does not give rise to a federal claim on Flanders' part.

I therefore concur in the denial of the petition for rehearing.