**Carlton Jerome POPE, Petitioner–Appellee,**

v.

**J.D. NETHERLAND, Warden, Respondent–Appellant.**

**Carlton Jerome POPE, Petitioner–Appellant,**

v.

**J.D. NETHERLAND, Warden, Respondent–Appellee.**

Nos. 96–17, 96–18.

United States Court of Appeals, Fourth Circuit.

Argued March 3, 1997.

Decided May 22, 1997.

---

**67.** *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 479–80, 116 L.Ed.2d 385 (1991).

**68.** *See Bell,* 72 F.3d at 436.

**ARGUED:** Katherine P. Baldwin, Assistant Attorney General, Office of the Attorney General, Richmond, VA, for Appellant. Steven M. Umin, Williams & Connolly, Washington, DC, for Appellee. **ON BRIEF:** James S. Gilmore, III, Attorney General of Virginia, Office of the Attorney General, Richmond, VA, for Appellant. Kevin T. Baine, Regina G. Maloney, John T. Parry, Williams & Connolly, Washington, DC, for Appellee.

Before WILKINSON, Chief Judge, HALL, Circuit Judge, and BUTZNER, Senior Circuit Judge.

Reversed in part and affirmed in part by published opinion. Senior Judge BUTZNER wrote the opinion, in which Chief Judge WILKINSON and Judge HALL joined. Chief Judge WILKINSON wrote a concurring opinion.

## OPINION

BUTZNER, Senior Circuit Judge:

The Commonwealth of Virginia, acting through one of its wardens, J.D. Netherland, appeals a judgment of the district court granting a writ of habeas corpus to Carlton Jerome Pope who had been sentenced to death. The district court reasoned that the Virginia Supreme Court violated the due process clause of the Fourteenth Amendment by applying an unforeseeable novel interpretation of robbery retroactively to the facts of Pope's case. Contrary to the district court, we conclude that the Supreme Court applied law that had long been settled before Pope's crime. On this issue we reverse the district court's grant of a writ of habeas corpus.

In his cross-appeal Pope raises several assignments of error. For various reasons the district court found these assignments of error defaulted or lacking in merit. On these issues we affirm the district court's judgment.

I

Pope was convicted of capital murder in the commission of robbery in violation of Va.Code § 18.2–31(4). The Virginia Supreme Court affirmed Pope's conviction. *Pope v. Commonwealth*, 234 Va. 114, 360 S.E.2d 352 (1987). It denied Pope's petition for rehearing, and the United States Supreme Court denied certiorari. *Pope v. Virginia*, 485 U.S. 1015, 108 S.Ct. 1489, 99 L.Ed.2d 716 (1988).

Pope filed a petition for habeas corpus relief in the City of Portsmouth Circuit Court which was dismissed on August 22, 1989. The Virginia Supreme Court affirmed the dismissal and subsequently denied Pope's petition for rehearing. The U.S. Supreme Court again denied Pope's petition for a writ of certiorari. *Pope v. Thompson*, 498 U.S. 908, 111 S.Ct. 280, 112 L.Ed.2d 235 (1990). Pope then filed a second habeas petition with the Virginia Supreme Court pursuant to its original jurisdiction. The Virginia Supreme Court dismissed the petition on September 6, 1991.

Having exhausted his state law remedies, Pope filed a petition for habeas review in federal district court, which granted the writ but denied many of Pope's claims. Both parties have appealed.

II

The Virginia Supreme Court stated its findings of fact as follows:

On the evening of January 12, 1986, Marcie Ann Kirchheimer was a passenger in the front seat of a two-door "little Sunbird" owned and driven by her sister, Cynthia Gray. Cynthia drove to "Nick's Pool Hall" in downtown Portsmouth in search of a man named James Taylor. When they arrived, Marcie left the car and knocked on the door of the pool hall, but found the establishment closed. As Marcie returned to the car, Pope, who was across the street, called to them to ask if they were looking for Taylor. He walked to the car, identified himself as "Carl," and told them that Taylor had left the pool hall.

Pope asked Cynthia if she would give him a ride home. She agreed, and Pope

got into the back seat of the car, where he sat on the right side, behind Marcie. Cynthia first drove to James Taylor's mother's house, where Marcie left the car to talk with Taylor's mother for a few minutes. Taylor was absent, and Marcie told his mother that they would return in ten or fifteen minutes. Marcie then rejoined Cynthia and Pope in the car. Pope directed Cynthia to Bagley Street. During the drive, Cynthia was drinking from a bottle of wine. She passed the bottle back to Pope, who also drank from it.

When the car arrived at Bagley Street, Pope told Cynthia to stop on the left side, "the wrong side of the road as [they] were travelling." Marcie opened the passenger door and pulled the seat forward to let Pope out. Immediately after emerging from the car, Pope turned toward the women, pointed a pistol at them, and said, "give me all your money." Startled, the women made no immediate response and Pope fired a shot into Cynthia's head. Marcie reached up and grappled with Pope for the gun. Pope "pulled free" and "started to run off, and took two or three steps off, and turned around." Pope then shot Marcie in the back of the head and "took off running."

Cynthia was bleeding from the head and was slumped over the steering wheel. Marcie, knowing that she, too, had been shot, "halfway sat on [Cynthia] in the middle of the car," turned on the car's emergency blinkers and drove as fast as she could to Portsmouth General Hospital. Marcie drove to the door she thought was the emergency entrance, jumped out of the car and ran to the door. Finding the door locked and that entrance no longer in use, she ran back past Cynthia's car and entered the front lobby of the hospital. There, she encountered two police officers, William Mutter and George Vick. The officers heard Marcie's screams and followed her as she ran back to the car. They found Cynthia dead from a gunshot wound to the right temple. The bullet had passed through the brain and exited in front of the left ear. Marcie was admitted to the hospital. She had a bullet wound behind the right ear. The same bullet had subse-

quently passed through her left shoulder and exited under her left arm. Later, in court, Marcie positively identified Pope as the assailant.

Upon arriving at the car, the police officers called for assistance and preserved the condition of the car until it could be examined. The wine bottle from which Cynthia and Pope had been drinking was found on the driver's seat and was turned over to a fingerprint examiner who found that it bore a print which positively matched a fingerprint taken from Carlton Pope.

Marcie had had no purse, and testified that Pope had taken nothing from her, but Cynthia's purse was missing after the shooting. Cynthia had been carrying a clutch-type purse with a zipper closure which she left open. It was lying "right in between the bucket seats" as the women drove to Nick's Pool Hall. During that drive, Cynthia took her checkbook out of the purse momentarily and then replaced it in the purse, which remained between the bucket seats. After the shooting, the purse was missing but the police found the checkbook on the floor of the car between the passenger seat and the door on the passenger side, through which Pope had left the car. Marcie testified that it was not Cynthia's practice to leave the checkbook on the floor or to leave "things like that strewn about the car." Marcie last saw the purse between the bucket seats, and did not see it after the shooting. While she did not see Pope remove it, she testified that it was in his view and that he had ample opportunity "to grab it without me seeing him."

*Pope v. Commonwealth,* 234 Va. at 117–19, 360 S.E.2d at 354–55. These findings of fact are binding on us. *See Sumner v. Mata,* 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981).

The parties have briefed the case under the law that was in effect before the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) in 1996. Because we deny the petition under pre-AEDPA standards, we need not address the application of the more deferential standards of

review established by the 1996 Act. We also grant Pope's certificate of appealability. *See Barefoot v. Estelle,* 463 U.S. 880, 892–96, 103 S.Ct. 3383, 3394–96, 77 L.Ed.2d 1090 (1983).

### III

On direct appeal Pope claimed that the evidence was insufficient on two grounds. The first ground was that someone else took Gray's purse while Marcie ran for help. The Virginia Supreme Court ruled that this was a factual issue which had been rejected by the jury when it found Pope guilty of robbery. *Pope,* 234 Va. at 125, 360 S.E.2d at 359. The second ground was that Pope removed the purse before the shooting and concealed it. In that event he says he would be guilty of larceny, not robbery, and hence would not be guilty of capital murder. The Supreme Court recognized that the second ground involves a matter of law. It said:

> Pope's second hypothesis is fallacious as a matter of law. We decided in *Linwood Earl Briley v. Commonwealth,* 221 Va. 532, 273 S.E.2d 48 (1980), ... that where a killing and a taking of property are so closely related in time, place, and causal connection as to make them parts of the same criminal enterprise, the predicates for capital murder under Code § 18.2–31(d) are established. Further, these relationships need not necessarily be jury questions. They may, in a proper case, be determined as a matter of law.

*Pope v. Com.,* 234 Va. at 125, 360 S.E.2d at 359.

Pope counters that the Virginia Supreme Court violated the due process clause by retroactively applying a novel and unforeseeable interpretation of the law to uphold his conviction. It was on this theory that the district court granted the writ.

Pope claims he presented the due process issue implicitly in his direct appeal and explicitly in his second habeas petition addressed directly to the Virginia Supreme Court. He relies on *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), for the proposition that a court violates the due process clause by applying a novel interpretation of the law that trans-

forms larceny to robbery as a matter of law in a context that made the novel charge unforeseeable.

The Commonwealth contends that this issue is procedurally defaulted because it was not raised squarely, as required by law, until the second state habeas petition. Alternatively, the Commonwealth argues that Pope's due process claim lacks merit and that Virginia's common enterprise rule was not novel or retroactively applied.

■ We cannot accept the Commonwealth's contention that Pope is barred by procedural default. In the state proceedings, Pope squarely raised the issue whether the evidence was insufficient to convict him as a matter of law. Addressing a similar issue in *West v. Wright,* 931 F.2d 262 (4th Cir.1991), *rev'd on other grounds,* 505 U.S. 277, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992), we said:

> Any challenge to the sufficiency of the evidence to convict in a state prosecution is necessarily a due process challenge to the conviction. *Jackson v. Virginia,* 443 U.S. 307, 321, 99 S.Ct. 2781, 2790, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). The fact that West did not couch his objections and challenges in state court in specific constitutional terms is of no consequence; it is not necessary to cite "book and verse on the federal constitution" so long as the constitutional substance of the claim is evident. *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971); *Hawkins v. West,* 706 F.2d 437, 439 (2d Cir.1983) (claim in state court that "case fell far short of that required to prove ... guilt beyond a reasonable doubt" adequately raises due process claim).

931 F.2d at 266. Pope properly exhausted his due process claim in the state courts. We will therefore consider the Commonwealth's alternative ground for reversing the district court.

### IV

■ In *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), the Supreme Court held that when an

"unforeseeable state court's construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime." *Id.* at 354–55, 84 S.Ct. at 1703. The Court applied this principle of constitutional law to reverse the convictions of sit-in protestors because the Supreme Court of South Carolina had applied an unforeseeable interpretation of a criminal trespass statute that "had not the slightest support" in prior South Carolina decisions. *Id.* at 356, 84 S.Ct. at 1704. Pope relies on *Bouie* to support his argument that "the Virginia Supreme Court violated due process by affirming the robbery and capital murder convictions based on a novel and unforeseeable interpretation of state law."

Capital murder, like felony-murder, is a distinct statutory crime. The statute defining felony-murder, Va.Code Ann. § 18.2–32 (Cum.Supp.1985), provides "[m]urder in the commission of, or attempt to commit ... robbery ... is murder of the first degree." *See Haskell v. Commonwealth,* 218 Va. 1033, 1035, 243 S.E.2d 477, 478 n. 1 (1978). In *Haskell,* the Virginia Supreme Court defined the scope of the felony-murder doctrine. After surveying the case law of other states, the court said:

> The rule which we adopt, therefore, consistent with the weight of authority elsewhere, is that the felony-murder statute applies where the killing is so closely related to the felony in time, place, and causal connection as to make it a part of the same criminal enterprise.

*Haskell,* 218 Va. at 1041, 243 S.E.2d at 483. This definition of felony-murder was published nearly ten years before the Court considered *Pope* in 1987.

The relevant portion of the capital murder statute in effect when Pope shot Gray had its origin in the felony-murder doctrine. Va. Code § 18.2–31(d) provided:

> *Capital murder defined; punishment.—* The following offenses shall constitute capital murder, punishable as a Class 1 felony:

> \* \* \* \* \* \*

(d) The willful, deliberate and premeditated killing of any person in the commission of robbery while armed with a deadly weapon.

Va.Code Ann. § 18.2–31 (1985 Cum.Supp.).

The Virginia Supreme Court interpreted this section of the capital murder statute consistently with its explanation of the felony-murder rule in *Haskell,* 218 Va. at 1041, 243 S.E.2d at 483. The court defined capital felony-murder as follows: "Thus, borrowing and adapting the language of *Haskell,* we hold that the killing involved here was so closely related in time, place, and causal connection as to make the killing, as a matter of law, a part of the same criminal enterprise." *Briley v. Commonwealth,* 221 Va. 532, 544, 273 S.E.2d 48, 55–56 (1980). Prior to Pope's offense, the Supreme Court reaffirmed this principle in *Edmonds v. Commonwealth,* 229 Va. 303, 310, 329 S.E.2d 807, 813 (1985), stating that "where the killing and the theft are interdependent objects of a common criminal design ... we will affirm the conviction of capital murder in the commission of robbery."

Both capital murder and noncapital felony-murder have been applied to myriad factual situations, but we have found no Virginia case that dealt with a taking before the use of force. The Supreme Court of Connecticut, however, applied that state's felony-murder statute—which contained a provision similar to Virginia's capital murder statute—to a situation quite like Pope's offense. *See State v. Gunning,* 183 Conn. 299, 439 A.2d 339 (1981). In *Gunning,* the defendant and the victim had been drinking at the victim's house. The evidence disclosed that the defendant took items from the victim's home and killed the victim. There were no eyewitnesses to relate the sequence of events, but there was evidence that the defendant intended to commit at least larceny. The Supreme Court of Connecticut, upholding a verdict of felony-murder, said:

> We conclude that a sufficient link between the larceny and the homicide has been established in this case. As discussed above, the defendant was connected to both events. The time frame within which both events occurred was relatively nar-

row: less than two hours and forty-five minutes elapsed between 5:30 p.m., when the victim left the bar, and 8:15 p.m., the latest time testified to by the medical examiner as the time of death. The jury could have reasonably concluded that the homicide and the larceny were sufficiently intertwined to result in the robbery required by the indictment. *Gunning,* 183 Conn. at 313, 439 A.2d at 347–48. *Accord Flanders v. Meachum,* 22 F.3d 48, 49–50 (2d Cir.1994).

Virginia's law of capital murder as explained in *Briley,* 221 Va. at 534, 273 S.E.2d at 53–56, six years before Pope's offense, is not novel. It is soundly based on the Supreme Court's interpretation of the felony-murder provisions in § 18.2-32. Nor was the common criminal enterprise interpretation of the capital murder statute retroactively applied. It was rooted firmly in the doctrine of felony-murder which had long been part of the law of Virginia.

The taking of property and the killing of Cynthia were so closely related in time, place, and causal connection that they met Virginia's definition of common criminal enterprise. Well established principles of law and the evidence support the judgment that Pope was guilty of capital murder. Reversing the district court's judgment, we deny Pope's petition for habeas corpus with respect to this issue.

### V

In his cross-appeal, Pope alleges that the district court erred in denying the petition on the following grounds:

- false testimony was admitted at trial;
- exculpatory evidence was withheld;
- ineffective assistance of counsel at trial and on appeal;
- ineffective assistance of counsel at sentencing;
- he was denied an independent fingerprint expert;
- the death penalty was imposed arbitrarily.

The district court dismissed all of these claims as either procedurally defaulted or lacking merit. We will consider them in turn.

### VI

The district court allowed Pope to pursue discovery on the claims that false testimony was admitted at trial. After more than three years of discovery, the district court dismissed the claims.

At trial, Marcie testified that Cynthia wrote a check from a checkbook in her purse, then put the checkbook back in her purse, and cashed the check. Marcie testified that this was the only checkbook belonging to Cynthia. A police officer testified that the checkbook was recovered on the floor between the passenger seat and the passenger door. The Commonwealth theorized that after killing Gray, Pope took the purse during the struggle with Marcie and the checkbook fell out of the purse.

During the proceedings on Pope's second state habeas petition, the Commonwealth turned over copies of Gray's checks. The checks indicated that the check Cynthia wrote in the car did not come from the checkbook offered into evidence. Pope claimed that because Cynthia did not write a check from the checkbook offered into evidence, Marcie's trial testimony was false.

Pope also claimed that a police detective falsely testified that on the night of the crime he photographed the checkbook situated between the passenger seat and the passenger door. In a discovery deposition taken 10 years later, the detective testified that the photographs were probably taken the next day when the car was impounded at the police station, but he could not remember. Because of this alleged inconsistency, Pope claims the detective committed perjury.

■ We agree with the district court's ruling that the claims relating to the checkbook were procedurally barred because Pope failed to raise them in the state trial or first habeas corpus proceedings. *See Murray v. Carrier,* 477 U.S. 478, 485–92, 106 S.Ct. 2639, 2643–48, 91 L.Ed.2d 397 (1986). Pope has not established cause for his failure to raise these claims earlier, nor has he established prejudice stemming from the violations. *Wainwright v. Sykes,* 433 U.S. 72, 90–91, 97

S.Ct. 2497, 2508–09, 53 L.Ed.2d 594 (1977). Pope had an opportunity to uncover this alleged false testimony from the bank during the state court proceedings. Once Marcie testified at trial about the checkbook, Pope's counsel could have conducted a "reasonable and diligent" investigation of Gray's bank records to determine whether the check Gray wrote on the night in question came from the checkbook entered into evidence. *Cf. Hoke v. Netherland,* 92 F.3d 1350, 1355 (4th Cir. 1996). The incident, however, corroborates Marcie's testimony that Cynthia did in fact cash a check on the night she was murdered, and it tends to refute the claim that Marcie was drunk and confused. The minor inconsistency as to when the detective photographed the checkbook in the car is also immaterial and did not prejudice Pope. Another police detective testified at trial that on the night of the murder she saw the checkbook lying in the position depicted in the photograph.

Pope also claimed that Marcie lied about her level of intoxication and whether she and her sister were looking for drugs on the night in question. On cross-examination at trial, Marcie testified that she drank as many as four beers that night.

During discovery Pope reviewed 88 documents relating to the Commonwealth's case, including several pages of the prosecutor's handwritten notes. These notes indicate that Marcie drank "a couple of beers—5 maybe 6" that night. The notes also reveal that one of the police characterized Marcie as drunk and confused. A police officer suspected that the women were looking for drugs because Nick's Pool Hall was a known drug location and James Taylor, the man the two women were looking for, was a known dealer.

 A conviction must only be reversed if there is "any reasonable likelihood" that testimony the Commonwealth knew or should have known to be false could have affected the judgment of the jury. *United States v. Kelly,* 35 F.3d 929, 933 (4th Cir. 1994). The discovery of potentially false testimony about the extent of Marcie's involvement with alcohol and drugs would have had little effect on the jury because evidence of her drinking and drug involvement was pre-sented to the jury at trial. The jury heard that Marcie and her sister were looking for a known drug dealer whose nickname was "Blood" and that syringes were found in the car. The jury was also told of Marcie's arrest record for drugs and prostitution. The jury had occasion to consider Marcie's credibility in light of this evidence. The discrepancies discovered by Pope were immaterial inasmuch as "there was not a reasonable likelihood that the false testimony could have affected the judgment of the jury." *Kelly,* 35 F.3d at 933.

Pope's false testimony claims, even when considered collectively, would not have had a material effect on the jury's verdict. *See United States v. Bagley,* 473 U.S. 667, 674–75, 105 S.Ct. 3375, 3379–80, 87 L.Ed.2d 481 (1985). We affirm the district court's ruling that the false testimony claims relating to the checkbook were procedurally barred and the claims relating to Marcie's involvement with alcohol and drugs were meritless.

## VII

Pope claims that the Commonwealth withheld exculpatory evidence concerning the existence of the checkbook and Marcie's involvement with alcohol and drugs in violation of *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). Since the failure of the Commonwealth to divulge Gray's bank records did not preclude Pope from obtaining the evidence elsewhere, the *Brady* rule does not apply. *United States v. Wilson,* 901 F.2d 378, 380 (4th Cir.1990). Similarly, the additional evidence of Marcie's involvement with alcohol and drugs found in the prosecutor's note did not constitute a *Brady* violation. As stated above, the evidence was not material to the outcome of the trial, as it did not deprive Pope of a fair trial. *Bagley,* 473 U.S. at 674–76, 105 S.Ct. at 3379–81. We affirm the district court on this issue.

## VIII

Pope claimed ineffective assistance of trial and appellate counsel in his first habeas petition. The crux of these claims relate to trial counsel's investigation of the robbery, partic-

ularly counsel's failure to subpoena Gray's bank records, to raise *Brady* claims, and to investigate Marcie's connections to the Portsmouth drug community. As we have shown in Part VI, these allegations do not rise to the level of a constitutional violation. Pope cannot show that his counsel's performance prejudiced him in any material manner. *See Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

■ Among the claims that the Supreme Court of Virginia held to be defaulted in its dismissal of Pope's second state habeas corpus proceedings was the failure of his trial counsel to ask the court to give a larceny instruction. The dismissal was based on adequate state grounds—that is, the failure to raise this claim in his first habeas petition. Va.Code § 8.01–654(B)(2) ("no writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition"). When a state court rejects a claim on the adequate and independent state ground of a violation of a state procedural rule, federal habeas review of that claim is precluded, unless the petitioner shows cause and prejudice. Pope showed neither. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2564–65, 115 L.Ed.2d 640 (1991).

### IX

With respect to the complaint that counsel was ineffective at sentencing, Pope argues that this could not be presented to the Virginia Supreme Court on direct appeal. There was, however, no bar to raising counsel's deficiencies in his first habeas corpus proceeding, and counsel's deficiencies were, in fact, raised at that time. Pope charged in his first habeas petition that during the sentencing phase his counsel failed to properly address or argue to the jury whether the Commonwealth had met its burden of proving future dangerousness. He also alleged that counsel failed to challenge the trial court's imposition of the death sentence without a jury finding the evidence of future dangerousness beyond a reasonable doubt and without finding the essential elements of future dangerousness. Finally, he alleged that his counsel failed to challenge the trial court's failure to discuss or even note the court's consideration of any mitigating factors.

The first state habeas court denied these claims, and the Virginia Supreme Court affirmed the denial.

Pope raised the same complaint about the ineffectiveness of his sentencing counsel in his second habeas corpus petition. Pope separated his claim into three central allegations. First, Pope alleged that his counsel failed to conduct a reasonable investigation into Pope's background and to develop mitigating evidence. Second, he alleged that his counsel failed to obtain an adequate mental evaluation. Finally, he complained of his counsel's inadequate performance at the sentencing phase. This last allegation included the claim of failure to argue insufficiency of the evidence of future dangerousness, which was raised in the first habeas petition.

The Supreme Court dismissed all of these claims because they could have been presented in the first habeas proceeding, citing Va. Code Ann. § 8.01–654(B). The specific claim regarding future dangerousness, however, was denied on the basis that the claim had been previously resolved against Pope. *Hawks v. Cox,* 211 Va. 91, 175 S.E.2d 271 (1970).

In the federal habeas corpus proceeding, the district court dismissed all of these claims on the ground that they had been defaulted or lacked merit. On this issue, we affirm the district court.

### X

The district court properly denied Pope's petition on the ground that he was denied an independent fingerprinting expert. Pope claims that the fingerprints on the wine bottle linking him to the car were a material source of evidence to the Commonwealth's case. He claims that "analysis of fingerprint evidence requires technical expertise, unlikely to be possessed by counsel." Accordingly, Pope argued that he should have had access to an independent fingerprint expert so that defense counsel could effectively cross-examine the state's expert testimony.

Pope never raised this issue until the second habeas proceeding. The Virginia Supreme Court and the district court correctly held that the claim was procedurally barred. Va.Code § 8.01–654(B)(2), *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680, 682 (1974).

## XI

■ On the penalty issue, the jury in its verdict found

> after consideration of [Pope's] history and background that there is a probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society and having considered the evidence in mitigating the offense, unanimously fix his punishment at death.

Pope's claim that the verdict was arbitrarily imposed in violation of the Eighth Amendment is based primarily upon the insufficiency of the evidence to prove future dangerousness. Pope points to several other capital cases where the defendants possessed far more extensive and brutal criminal histories than his. *Cf. O'Dell v. Commonwealth*, 234 Va. 672, 705–06, 364 S.E.2d 491, 510 (1988), *Evans v. Commonwealth*, 228 Va. 468, 482, 323 S.E.2d 114, 123 (1984).

In Virginia, the crime for which a defendant is convicted, in and of itself, can satisfy the element of future dangerousness. *See Goins v. Commonwealth*, 251 Va. 442, 468, 470 S.E.2d 114, 131 (1996). In addition to murdering Gray and maiming Kirchheimer, Pope had a prior conviction of armed assault and four misdemeanor offenses. He had just been released on parole for his armed assault conviction when he murdered Gray. The Virginia Supreme Court noted Pope's "increasing violence after punishment for earlier crimes" and his "escalating tendency toward violence." *Pope*, 234 Va. at 127–28, 360 S.E.2d at 360–61. The district court dismissed Pope's claim, and we affirm on this issue.

## XII

With respect to the Commonwealth's appeal, we reverse the district court's grant of the writ of habeas corpus. With respect to Pope's cross-appeal, we affirm the district court's denial of Pope's claims for relief.

*REVERSED IN PART; AFFIRMED IN PART.*

WILKINSON, Chief Judge, concurring:

I concur in Judge Butzner's careful opinion. I agree that there is nothing novel about the Virginia Supreme Court's decision in Pope's case. I would note also that, although couched in due process terms, Pope's real claim is that the Virginia Supreme Court misinterpreted the capital felony-murder statute in Virginia Code section 18.2–31(d). This is purely a state law question on which the Virginia Supreme Court has the final word, *see Wainwright v. Goode*, 464 U.S. 78, 84, 104 S.Ct. 378, 382, 78 L.Ed.2d 187 (1983), notwithstanding Pope's attempt to affix a federal "due process" label to his argument.